IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARRYL CHEATHAM, *et al.*, )
)
Plaintiffs, )
)
v. ) Case No. 3:12cv263–HEH
)
NGM INSURANCE COMPANY, )
)
Defendant. )

## MEMORANDUM OPINION
(Cross Motions for Summary Judgment)

This is an action seeking declaratory judgment and damages from defendant insurance carrier under a construction contractor's commercial general liability policy. Specifically, Plaintiffs seek a declaration of coverage based on a default judgment rendered by the Circuit Court for the City of Richmond on May 20, 2011. The Order emanating from that hearing awarded judgment to the Plaintiffs in the amount of $215,181.67 for fraud and misrepresentation, and $43,363.00 for breach of contract against Alpha & Omega, LLC and Chris Bradley, jointly and severally. In their Complaint, Plaintiffs contend that Chris Bradley ("Bradley") and Alpha & Omega are judgment proof and that Bradley is currently in bankruptcy. Plaintiffs now seek satisfaction of the judgment from Alpha & Omega's insurance carrier, NGM Insurance Company ("NGM") pursuant to Section 38.2-2200, Virginia Code Annotated. NGM denied liability and this lawsuit followed.

This case is presently before the Court on cross motions for summary judgment. Both parties have filed memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid in the decisional process.

Disputes over insurance coverage typically turn on the plain and ordinary meaning of the terms of the insurance policy. *Gov't Emples. Ins. Co. v. Moore*, 266 Va. 155, 164, 580 S.E.2d 823, 828 (2003). An insurance policy is essentially a contract for insurance coverage. *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 498, 502, 423 S.E.2d. 188, 191 (1992). Under well-settled principles of insurance jurisprudence, absent ambiguities, courts must enforce the insurance contract as written. *Monticello Ins. Co. v. Baecher*, 252 Va. 347, 350, 477 S.E.2d 490, 491 (1996).

Motions for summary judgment are measured by the standard articulated in Federal Rule of Civil Procedure 56. Rule 56(a) counsels courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). As pointed out by the Court in *Anderson*, although the party opposing summary judgment is entitled to all reasonable inferences, in order to defeat summary judgment, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. *Id.* at 248, 250–52.[1]

---

[1] Plaintiffs Darryl and De'Ionne Cheatham highlight provisions of the insurance contract which they appear to contend are disputed issues of material fact. The interpretation of disputed

2

Under Virginia law, the policy holder bears the burden to establish coverage under the terms of the policy. *Furrow v. State Farm Mut. Auto. Ins. Co.*, 237 Va. 77, 80, 375 S.E.2d 738, 740 (1989). Conversely, the insurance carrier has the burden to establish exclusions to coverage. *United States Life Ins. Co. v. Mason*, 214 Va. 328, 330, 200 S.E.2d 516, 517 (1973).

Plaintiffs' claim of insurance coverage is predicated on the default judgment rendered by the Circuit Court for the City of Richmond ("Circuit Court"). That judgment, rendered after hearing argument of counsel and the testimony of witnesses, was for "fraud and misrepresentation" and "breach of contract." (Pls.' Notice of Removal, Ex. B, ECF No. 1-3.) In the complaint underlying that judgment, Plaintiffs allege that Bradley and his company were engaged for the purpose of construction, mold remediation and remodeling of Plaintiffs' property. (Pls.' Notice of Removal, Ex. A.) Plaintiffs maintain that Bradley and his company failed to perform the restoration and mold remediation as promised. Plaintiffs describe his work product as "wanton, substandard and careless." (*Id.* at 4.) Moreover, the work actually undertaken by his company was not 100 percent completed. According to Plaintiffs, their home was left uninhabitable.[2]

As a result of the Defendant's breach of the contract, "by their substandard and untimely completion [of work]," Plaintiffs incurred loss of income, bank loan interest

---

contract terms are not the type of material factual issues barring summary judgment. Moreover, both parties have indicated to the Court that this case is peculiarly suited for disposition by summary judgment.

[2] Plaintiffs' home was apparently damaged as a result of flooding.

paid, contractual penalty charges due, expenses for renting alternative housing and increased insurance premiums. Plaintiffs also sought to recoup $67,000 in contract payments to Bradley and his company. (*Id.* at 5.)

With respect to the fraud and misrepresentation count, Plaintiffs asserted in their state court complaint that Bradley represented that he was a licensed contractor skilled in mold remediation, restoration and renovation. The complaint alleges that Bradley did not in fact hold a contractor's license for building and construction in the Commonwealth of Virginia. Bradley also warranted to the Plaintiffs that renovations to their property would be completed in approximately 60 days from the issuance of all applicable permits. The work was not completed in a timely manner.

The underlying insurance contract in this case is essentially a comprehensive general liability policy containing fairly standard terms of coverage. As the Supreme Court of Virginia pointed out in *Nationwide Mut. Ins. Co. v. Wenger*, a general liability policy is not a performance bond safeguarding against nonperformance or poor workmanship. The Court in *Wenger* concluded that there was no coverage under a standard comprehensive general liability insurance policy for "damages arising from internal defectiveness of the insured's own work product." 222 Va. 263, 269, 278 S.E.2d 874, 877 (1981) (citations omitted).

The insurance policy at issue in this case contains a number of exclusions and limitations, most of which are common to such policies and have been clearly construed by the Supreme Court of Virginia or other courts of the Commonwealth of Virginia. Of particular importance in evaluating the claims at hand are provisions of the Contractor's

4

Policy Declarations. Under Section A entitled "Business Liability coverage," the policy states that "[NGM] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' [or] 'property damage' . . . to which this insurance applies." This subsection includes the additional limitation that "[t]his insurance applies: (1) [t]o 'bodily injury' and 'property damage' only if: (a) [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" In Section F of the Contractor's Policy Declarations, entitled "Liability and Medical Expenses Definitions," the term "occurrence" is defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Def.'s Mem. Supp. Mot. Summ. J., Ex. 5, ECF No. 20-5.)

The scope of coverage is further narrowed by the exclusions provision of the Contractor's Policy Declarations. Section B.1.a. specifically excludes from coverage "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." (*Id.*) The "Exclusions" section also imposes further constraints on liability for property damage. It specifically excludes coverage for property damage to

> (5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the 'property damage' arises out of those operations; or
> (6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

(*Id.*)

NGM contends that the foregoing limitations and exclusions clearly preclude a finding of coverage in this case. The two claims on which the Circuit Court awarded default judgment were fraud and misrepresentation and breach of contract. Neither fraud

5

nor breach of contract involves accidental acts qualifying as an occurrence. Moreover, the breach of contract claim, more particularly set forth in the complaint filed in Circuit Court, arises from Bradley and Alpha & Omega's failure to fulfill the terms of their contract or agreement. The latter is specifically excluded under the definition of an "occurrence" and other language in the Contractor's Policy Declarations. *See* Contractor's Policy Declarations, Section A.1.b.

In *AES Corp. v. Steadfast Ins. Co.*, the Supreme Court of Virginia had occasion to restate the well-settled meaning of the word "occurrence," which was defined in that case exactly as it appears in the policy presently before the Court. The Supreme Court of Virginia concluded that

> The terms 'occurrence' and 'accident' are 'synonymous and . . . refer to an incident that was unexpected from the viewpoint of the insured.' We have held that an 'accident' is commonly understood to mean 'an event' which creates an effect which is not the natural or probable consequence of the means employed and is not intended, designed, or reasonably anticipated. An accidental injury is one that 'happen[s] by chance, or unexpectedly; taking place not according to the usual course of things; casual; fortuitous.'

283 Va. 609, 617, 725 S.E.2d 532, 536 (2012) (citations omitted).

Plaintiffs appear to acknowledge that their claim of coverage flows from Bradley and Alpha & Omega's "failure to adequately complete repair work to their home" as promised. (Pls.' Mem. Supp. Mot. Summ. J. 1, ECF No. 22.) The thrust of Plaintiffs' argument in support of summary judgment is that elements of the policy exclusions are ambiguous and should be resolved in favor of the insured, citing *Central Sur. & Ins. Corp. v. Elder*, 204 Va. 192, 197, 129 S.E.2d 651, 655 (1963). Furthermore, Plaintiffs correctly note that "[l]anguage in a policy purporting to exclude certain events from

coverage will be construed most strongly against the insurer." *St. Paul Fire & Marine Ins. Co. v. S. L. Nusbaum & Co., Inc.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984).

The memoranda filed by Plaintiffs supporting their motion for summary judgment and opposing that of NGM highlight a number of alleged ambiguities in the insurance contract. First, Plaintiffs take issue with NGM's definition and application of the term "occurrence." "The defendants [sic] claim that the policy defines 'occurrence' as an accident, yet a number of the damages sustained by the Plaintiffs were from work that ended up being done improperly and may be the result of an accident and function as an occurrence." (Pls.' Mem. Supp. Mot. Summ. J. 7–8.) This strained construction of the policy language is neither supported by any documentary evidence in this case nor the complaints filed in either state or federal court. It is also factually inconsistent with the judgment of the Circuit Court on the basis of which coverage is claimed in this case.

Alternatively, in their Memorandum in Opposition to Defendant's Motion for Summary Judgment, Plaintiffs suggest that Bradley's faulty workmanship could fall within the definition of an occurrence. The term "occurrence" is defined in Section F.12 of the Contractor's Policy Declarations. It states, "'[o]ccurrence' means an accident, including *continuous or repeated exposure to substantially the general harmful conditions*" (emphasis added in brief). In their Memorandum in Opposition, Plaintiffs maintain that they were continually exposed to the problems associated with the insured's work. "The Insured continually performed, continually worked, and continually damaged the Plaintiff's [sic] property month after month, causing more and more damage to the Plaintiff's [sic] home." (Pls.' Mem. Opp'n Mot. Summ. J. 6, ECF No. 24.)

7

Plaintiffs' argument, however, appears to overlook the pivotal word "accident." Irrespective of the time dedicated to the project by Bradley and his company, his work product, although shoddy, was intentional. The resulting damage was therefore not covered under the policy at issue. *Utica Mut. Ins.Co. v. Travelers Indem. Co.*, 223 Va. 145, 147, 286 S.E.2d 225, 226 (1982).

> Next, Plaintiffs argue that
>
> There appears to be coverage for a Products Hazard Completed Operations. Because a number of things were worked on, but not done successfully, the coverage for this might apply as well, as a number of the damages sustained by the Plaintiffs were from work that ended up being done improperly and may be the result of an accident and function as an occurrence.

(Pls.' Mem. Supp. Mot. Summ. J. 8.) A review of the language apparently relied upon by Plaintiffs contained in Section F.14 of the Contractor's Policy Declarations has no arguable application to any claim in this case.

Lastly, Plaintiffs assert that the damages awarded by the Circuit Court for fraud and misrepresentation "were not necessarily 'intended or expected.'" (Pls.' Mem. Opp'n Mot. Summ. J. 7.) Plaintiffs elaborate that "[t]here is no evidence that the insured expected or intended to cause property damage. . . . The leap that a lack of licenses resulted in damages is one that a reasonable jury might have a problem with." (*Id.*) The claim of fraud in this case was predicated on Bradley's representation that he held the requisite contractor's license to perform the work for which he was engaged. (Notice of Removal, Ex. A.) The monetary damages awarded by the Circuit Court were a direct

8

result of Plaintiffs' detrimental reliance on this misrepresentation of a material fact.[3] The gravamen of a claim of actual fraud is the knowing and intentional false misrepresentations of a material fact with the specific intent to mislead. *State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 218, 618 S.E.2d 316, 321 (2005). Plaintiffs' argument that Bradley and his company acted innocently is untenable and again, contrary to the findings of the Circuit Court.[4]

The Court has thoroughly examined the pertinent portions of the general liability policy under review and concludes that no material provisions are ambiguous. In fact, most have been well explained by Virginia courts and generally accepted in the industry. The default judgment entered by the Circuit Court clearly stakes the boundaries of liability—fraud and breach of contract. Plaintiffs' claims are purely performance based—either non-performance, partial performance or substandard performance. None of these claims fall within the ambit of the policy at issue.

---

[3] The Circuit Court obviously found that Bradley committed actual as opposed to constructive fraud because there is no representation in the complaint filed in that court that Bradley acted innocently or negligently. *See Evaluation Res. Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994).

[4] In Plaintiffs' Memorandum in Support of Motion for Summary Judgment, it appears to be suggested on page seven that this Court "under the Federal Declaratory Judgment Act, 28 U.S.C. §2201, and Rule 57 of the Federal Rules of Civil Procedure . . . has the ability to review the insurance policy and determine whether coverage exists." A copy of the policy in question, which exceeds 90 pages, has already been filed in the record. If Plaintiffs are intimating that this Court should conduct an independent, unguided review and analysis of the underlying insurance policy, this Court declines to do so. Furthermore, the Declaratory Judgment Act does not appear to contemplate such an independent review for unidentified ambiguities or theories of coverage. Motions for summary judgment filed under Rule 56 must be anchored to specific citations to the record evidence. *See* Rule 56(c)(1)(A); *Twist v. Meese*, 854 F.2d 1421, 1424 (D.C. Cir. 1988).

Finally, Plaintiffs contend that NGM's defenses to coverage may be foreclosed by its failure to comply with Va. Code Ann. § 38.2-2226. This provision is triggered

> Whenever any insurer on a policy of liability insurance discovers a breach of the terms or conditions of the insurance contract by the insured, the insurer shall notify the claimant or the claimant's counsel of the breach. . . . Failure to give the notice within forty-five days will result in a waiver of the defense based on such breach to the extent of the claim by operation of law.

Va. Code Ann. § 38.2-2226 (2012).

This code section has no application to this case. NGM does not maintain that the insured, Bradley, breached the terms or conditions of the policy. The pivotal issue is whether the language of the policy covers the claims. *See Berry v. State Farm Mut. Auto. Ins. Co.*, 340 F. Supp. 228, 231 (E.D. Va. 1972) (Hoffman, J.).

Finding no coverage under the policy, the Defendant's Motion for Summary Judgment will be granted and the Plaintiffs' Motion for Summary Judgment will be denied. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: Feb. 11, 2013
Richmond, VA